2026 IL App (1st) 242136

SECOND DIVISION
June 30, 2026

Nos. 1-24-2136, 1-24-2258 (cons.)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON, f/k/a The Bank Of New York, as Trustee for the Certificate Holders Cwalt, Inc., Alternative Loan Trust 2006-J8, Mortgage Pass-Through Certificates, Series 2006-J8, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | |
| DEBBIE BARTELSTEIN, a/k/a Deborah Bartelstein, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, | ) ) ) ) | No. 2007 CH 38051 |
| Defendants | ) ) | |
| (Debbie Bartelstein, | ) ) | |
| Defendant-Appellee). | ) ) | Honorable William B. Sullivan, Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, The Bank of New York Mellon, as trustee for the certificate holders CWALT,

Inc., Alternative Loan Trust 2006-J8, Mortgage Pass-Through Certificates, Series 2006-J8 (Bank

of New York), filed a mortgage foreclosure complaint against defendant Debbie Bartelstein.

Defendant subsequently filed a motion for summary judgment, which the trial court granted.  On

appeal, plaintiff contends that the court erred in granting defendant's summary judgment motion because (1) its default notice complied with the terms of the mortgage and (2) the statute of limitations on the foreclosure complaint does not bar its claim. Plaintiff has further appealed from the court's granting of defendant's petition for attorney fees and costs. For the following reasons, we (1) reverse the judgment of the trial court and remand for further proceedings and (2) vacate the award of attorney fees and costs.

¶ 2                                I. BACKGROUND

¶ 3     On October 26, 2006, defendant and Guaranteed Rate, Incorporated (Guaranteed Rate), entered into a note providing, *inter alia*, that Guaranteed Rate would lend $512,800 to defendant in exchange for defendant's promise to repay that amount plus interest. The note indicated that the maturity date was November 1, 2036. Section 6(C) of the note, entitled "Notice of Default," stated in part that, if defendant were in default, the lender "may require" her to immediately pay the full amount of the principal that has not been paid and all interest owed by a certain date that would be "at least 30 days after" the notice of default is mailed or otherwise delivered.

¶ 4     To ensure repayment of the note, defendant also executed a mortgage granting Guaranteed Rate a security interest in the property located at 321 Woodlawn Avenue in Glencoe, Illinois. The terms of the note were incorporated into the mortgage, including the maturity date. The mortgage was eventually assigned to plaintiff and recorded on January 23, 2008.

¶ 5     Section[1] 19 of the mortgage, entitled "Borrower's [here, defendant's] Right to Reinstate After Acceleration," stated in pertinent part that, if defendant met certain conditions, she would

---

[1]Although the parties and the trial court referred to various provisions of the mortgage as "paragraph" 19 or "paragraph" 22, we note that there are numerous instances in which the numbered paragraph is followed by one or more unnumbered paragraphs. Thus, for the sake of clarity, we refer to these provisions herein as "section" 19 or 22.

have the right to "have enforcement of this Security Instrument discontinued ***." Section 19 indicated that those conditions required that defendant:

"(a) pay[ ] Lender [plaintiff] all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cure[ ] any default of any other covenants or agreements; (c) pay[ ] all expenses incurred in enforcing this Security Instrument, including *** fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) take[ ] such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under the Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law."

Section 19 further stated, "Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."

¶ 6    Section 22 of the mortgage, entitled "Acceleration; Remedies," provided in relevant part the following:

"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument ***. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of

the sum secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure."

The section added that, if the default was not cured by the date specified in the notice, the lender "at its option may require immediate payment in full of all sums secured by this [mortgage] without further demand and may foreclose this [mortgage] by judicial proceeding."

¶ 7    Almost one year later, on September 17, 2007, the servicer of defendant's mortgage sent her a "notice of default and acceleration," stating in part as follows:

"The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is *** *$10,623.82*[.]

You have the right to cure the default. To cure the default, on or before October 17, 2007, [the servicer] must receive the amount of $10,623.82 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before October 17, 2007.

The default will *not* be considered cured unless [the servicer] receives *** $10,623.82 on or before October 17, 2007. If any check (or other payment) is returned to us for insufficient funds or for any other reason, *** the default will not have been cured. ***

If the default is not cured on or before October 17, 2007, the mortgage payments *will be accelerated* with the full amount

4

remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, [plaintiff] may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law."

(Emphases in original.)

The notice further informed defendant that she may have the right to file "a court action" to assert the non-existence of a default or any other defense to acceleration and foreclosure.

¶ 8 On December 24, 2007, plaintiff filed its initial mortgage foreclosure complaint, alleging in part that the amount due as a result of the default was the "outstanding principal balance of $509,610.43 with interest accruing at $102.97 *per diem*" plus various attorney fees and costs. The section entitled, "Request for Relief," stated in part as follows:

"Plaintiff request[s]:

* * *

3. A personal judgment for a deficiency, if sought [*sic*], only against those defendants/obligors not discharged in Bankruptcy."

Although service of process on defendant was not effectuated at the Woodlawn Avenue address because the property was listed as "vacant" with "no furniture inside of the unit," defendant was properly served at a residence on Monroe Avenue in Glencoe, Illinois.

¶ 9      On May 13, 2008, defendant filed her answer denying the substance of the allegations. Defendant further asserted three affirmative defenses that are not at issue here: plaintiff failed to comply with a federal regulation requiring a face-to-face meeting prior to filing the complaint, plaintiff is not the holder of the original note, and plaintiff is not entitled to enforce the note.

¶ 10      On June 15, 2009, plaintiff filed an amended foreclosure complaint, the operative document at issue here.  Plaintiff alleged that defendant had defaulted on the note and mortgage for failure to make the required monthly payments from August 2007 through the date of filing. The amended complaint stated that the amount then due was the "outstanding principal balance of $509,610.43 with interest accruing at $0.00 *per diem*" plus attorney fees and other costs related to the default.  The complaint did not state that the underlying promissory note had been accelerated. The complaint further asked the trial court to determine, pursuant to section 15-1603 of the Code of Civil Procedure (Code) (735 ILCS 5/15-1603 (West 2008)), the "length of the redemption period" based upon a finding as to whether the property is "residential, non-residential, or abandoned."  The section entitled, "Request for Relief," stated in part as follows:

"Plaintiff request[s]:

* * *

3. Only Those Defendants / Obligors, who have not received

an order discharging the subject debt in bankruptcy proceedings, or

who are not currently involved in bankruptcy proceedings in which

the stay has been modified for the sole purpose of foreclosing the

subject lien."

Plaintiff also attached copies of the mortgage and underlying note.  On June 9, 2010, defendant filed her answer, which included three affirmative defenses.  None of those affirmative defenses, however, are pertinent to the issues raised on this appeal.

¶ 11 On October 8, 2014, plaintiff filed a motion for summary judgment. On April 29, 2015, however, the trial court denied this motion without prejudice, finding that there was a genuine issue of material fact whether plaintiff was the holder of the note on the day it filed its complaint.

¶ 12 On December 19, 2019, defendant filed her motion for summary judgment. Defendant alleged that she was entitled to judgment as a matter of law on the following grounds: (1) plaintiff lacked capacity to file the foreclosure complaint, (2) plaintiff lacked standing at the time the foreclosure complaint was filed, (3) the "Acceleration Notice" failed to strictly comply with paragraph 22 of the mortgage, and (4) the mortgage has been extinguished by operation of law because the action on the underlying note was barred by the statute of limitations. On March 9, 2020, plaintiff filed its response to defendant's summary judgment motion. After addressing the claims regarding its capacity and standing, plaintiff argued that any issue regarding the sufficiency of the notice of acceleration or the extinguishment of the mortgage was forfeited because defendant neither raised the issues in her answer nor sought to amend her answer to include these affirmative defenses. Plaintiff further argued that, forfeiture aside, (1) defendant failed to show prejudice regarding any purported fault regarding the notice of acceleration and (2) statutory law and prior precedent defeated her claim that the mortgage was extinguished by operation of law. Due to delays from the COVID-19 pandemic, the trial court did not promptly rule on this motion.

¶ 13 On August 2, 2022, plaintiff filed its cross-motion for summary judgment. Plaintiff first noted that the trial court denied plaintiff's initial summary judgment motion without prejudice due to the court's finding that there was a genuine issue of material fact with respect to whether plaintiff was the holder of the note at the time the complaint was filed. Plaintiff then argued that it had both standing and capacity to file the foreclosure complaint because the note was "indorsed in blank," and plaintiff was the holder of the note at the time the complaint was filed. Plaintiff then argued

that there was no genuine issue of material fact regarding defendant's default on the loan or the amounts due on the loan, entitling it to summary judgment.

¶ 14    On December 15, 2022, defendant filed a combined reply in support of her summary judgment motion and response to plaintiff's cross-motion for summary judgment. Defendant first stated that, based upon controlling precedent, her affirmative defenses were not forfeited where they were raised in a summary judgment motion and plaintiff had sufficient time to respond to the defense. Defendant further argued that the notice of acceleration failed to strictly comply with the terms of the note, obviating the need to show prejudice. Defendant further reiterated that, pursuant to Illinois law, the mortgage lien is extinguished by operation of law when enforcement of the underlying note is barred by the applicable statute of limitations. Finally, defendant reiterated her arguments that plaintiff lacked capacity and standing to pursue the mortgage foreclosure action.

¶ 15    On February 8, 2023, the trial court entered a written order following a hearing on the parties' cross-motions for summary judgment. The court struck defendant's affirmative defenses—specifically, the defense challenging the sufficiency of the notice of default (the "*Accetturo* defense" (see *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783)) and the defense claiming the mortgage lien was extinguished based upon an action on the underlying note being time-barred. The court then denied both motions for summary judgment and further found that there was a genuine issue of material fact as to plaintiff's standing. Finally, the court continued the matter for a status hearing.

¶ 16    On March 29, 2023, defendant filed an amended motion to reconsider the trial court's February 2023 order. Defendant argued that the court erred in striking its affirmative defenses. Regarding the *Accetturo* defense, defendant argued that, although the court found that plaintiff had suffered "surprise and prejudice," plaintiff did not allege either in its written response to her summary judgment motion. Defendant further argued that the court erroneously struck its other

affirmative defense (*i.e.*, that the mortgage was extinguished by operation of law when the statute of limitations barred any action on the underlying note) because defendant raised that defense in her summary judgment motion and plaintiff was given ample time to respond to her motion.

¶ 17 On May 1, 2023, plaintiff also filed a motion to reconsider the court's February 2023 order. Plaintiff argued that the trial court erred in denying its summary judgment motion because it was "undisputed" that plaintiff had standing at the time the complaint was filed. In particular, plaintiff contended that it had attached the note to its complaint, and since the note was "endorsed in blank," plaintiff's possession of the note alone was sufficient to establish standing. Plaintiff added that an affidavit attached to its motion, which defendant failed to rebut, affirmed that plaintiff had continuous possession of the note since the cause of action was filed. Plaintiff further stated that these facts also showed that it also had the capacity to sue for foreclosure.

¶ 18 On August 2, 2023, the court denied plaintiff's motion to reconsider, again finding that there was a genuine issue of material fact as to whether plaintiff was the noteholder at the time it filed its mortgage foreclosure complaint. With respect to defendant's motion to reconsider, however, the court granted defendant's motion, finding that it had erroneously struck defendant's *Accetturo* and statute-of-limitations defenses, and it set the matter for a hearing on defendant's summary judgment motion on her affirmative defenses.

¶ 19 On September 27, 2023, the trial court issued a 48-page written opinion granting defendant's motion for summary judgment and denying plaintiff's summary judgment motion. The court noted that, on August 15, 2023, it had heard oral argument on defendant's summary judgment motion, which lasted "approximately two hours and ten minutes." With respect to the provision in the notice regarding the right to reinstate, the court found that plaintiff failed to strictly comply with the mortgage's express conditions precedent before accelerating the loan and initiating foreclosure. The court determined that, although sections 19 and 22 of the mortgage

separately defined defendant's right to cure and right to reinstate, plaintiff's notice referenced only a right to cure after acceleration and entirely omitted defendant's contractual right to reinstate the mortgage after acceleration. The court recounted that Illinois law requires strict, rather than substantial, compliance with conditions precedent, and since the omission constituted a substantive defect analogous to those found in *Accetturo*, 2016 IL App (1st) 152783, and *Associates Asset Management, LLC v. Cruz*, 2019 IL App (1st) 182678, plaintiff here did not satisfy its contractual obligations. The court then concluded that the acceleration was improper and that plaintiff brought the foreclosure action "prematurely," warranting summary judgment in favor of defendant and dismissal of plaintiff's mortgage foreclosure complaint.

¶ 20    With respect to defendant's claim that the mortgage lien extinguished as a matter of law when the statute of limitations on claims on the underlying note had run (thus vitiating any mortgage foreclosure action), the trial court found that section 13-206 of the Code "imposes a ten-year statute of limitations" for causes of action on a promissory note or other evidence of indebtedness.  735 ILCS 5/13-206 (West 2008).  After finding that plaintiff's cause of action accrued on October 17, 2007 (the deadline for defendant to cure the default, after which the loan "will be" accelerated), the court stated that the statute of limitations expired "on" October 17, 2017.[2] Observing that no action had been brought "on the [n]ote" by that date, the court found that the note was "deemed unenforceable by operation of law."  The court then found that, based upon "long-standing Illinois law," a plaintiff is precluded from foreclosing on a mortgage when an action on the underlying note is barred by the statute of limitations or another procedural rule. Based upon its review of earlier decisions, the court stated, "As a mortgage is a mere incident of a

---

[2]The trial court's statement seems to imply that the last day for plaintiff to have filed any action on the note was October 16, 2017, which is incorrect. The last day was October 17, 2017. See 5 ILCS 70/1.11 (West 2008); see also *Berry v. G.D. Searle & Co.*, 56 Ill. 2d 548, 557 (1974) (holding that the complaint filed on May 29, 1969, was timely filed within the four-year statute of limitations based upon an allegation of an implied warranty breach "on or before May 29, 1965").

note and becomes barred when the underlying debt is barred, [plaintiff's] ability to foreclose in the present action is estopped because the [n]ote *** 'died on the vine.' " The court, however, further added, "Although the debt itself might not be extinguished, the statute of limitations bars the remedy for enforcing the debt—an action for mortgage foreclosure." After rejecting plaintiff's argument that a separate action on the note was unnecessary because its mortgage foreclosure complaint also sought a deficiency judgment against defendant, the court found that plaintiff no longer had a "legally viable mortgage foreclosure claim." According to the court, summary judgment in favor of defendant and dismissal of the complaint was warranted on this additional basis. The court then directed plaintiff to release the mortgage within 30 days and granted defendant leave to file her petition for attorney fees.

¶ 21    On October 23, 2023, plaintiff filed a motion to reconsider the trial court's order of September 27, 2023. On September 25, 2024, the trial court issued a 69-page written opinion (and 25-page attached exhibit) denying plaintiff's motion to reconsider. In sum, the court maintained its view that plaintiff's notice was substantially defective as to defendant's right to reinstate after acceleration and that the mortgage "must be extinguished" and plaintiff's complaint dismissed because the note "has expired." On October 23, 2024, plaintiff filed a notice of appeal with respect to the trial court's orders entered on September 25, 2024, and September 27, 2023, "and all preceding orders subsumed therein" (appeal number 1-24-2136).

¶ 22    On October 24, 2024, the trial court issued a written order granting defendant's amended petition for attorney fees and costs. The order indicated that, on October 22, 2024, the court had held a hearing on the petition at which oral argument was heard. The court's order awarded defendant $160,492.52, comprising attorney fees of $157,306.25 and costs of $3,186.27.

¶ 23    On November 13, 2024, plaintiff filed a second notice of appeal, challenging the order entered on October 24, 2024 (appeal number 1-24-2258). This court consolidated the appeal

numbers 1-24-2136 and 1-24-2258 on December 12, 2024. On July 25, 2025, this court also allowed the American Legal and Financial Network (ALFN) leave to file an *amicus curiae* brief in support of plaintiff's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). This appeal follows.

¶ 24                                     II. ANALYSIS

¶ 25                                     A. Jurisdiction

¶ 26     We must first consider our jurisdiction. Defendant seems to raise an issue with this court's jurisdiction in the "jurisdiction" section of her brief, but she fails to both set the matter out as an issue for this court's review and provide any further argument in the "argument" section of her brief. Ordinarily, this would result in forfeiture of an issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). This court, however, has an independent duty to determine its jurisdiction, regardless of whether the parties have raised the issue. See *Ontiveroz v. Khokhar*, 2025 IL 130316, ¶ 1.

¶ 27     Pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), a notice of appeal must be filed with the circuit clerk within 30 days after either (1) the entry of the final judgment appealed from or (2) the entry of the order resolving the last timely filed postjudgment motion that was directed against that final judgment. A timely postjudgment motion is one that is filed within 30 days after that final judgment. 735 ILCS 5/2-1203(a) (West 2024). Although a motion filed "in apt time" stays the enforcement of the judgment, if that judgment grants "injunctive or declaratory relief," then that judgment is stayed only by a court order following "a separate application that sets forth just cause" for staying that particular judgment. *Id.* § 2-1203(b).

¶ 28     Here, with respect to appeal number 1-24-2136, the trial court entered its final order granting defendant's summary judgment motion and denying plaintiff's motion for summary judgment on September 27, 2023. Plaintiff then filed a motion to reconsider that order on October 23, 2023, which was within 30 days of that final judgment and thus timely filed. The court denied that motion by written order on September 25, 2024. Plaintiff therefore had 30 days from that day

to file its notice of appeal, *i.e.*, October 25, 2024. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); 735 ILCS 5/2-1203(a) (West 2024). Plaintiff did so, filing its notice on October 23, 2024. With respect to appeal number 1-24-2258, the trial court granted defendant's petition for attorney fees on October 24, 2024, and plaintiff filed its notice of appeal on November 13, 2024, which was well within the 30-day timeframe. We therefore have jurisdiction over this appeal.

¶ 29    We further reject defendant's apparent argument that, since plaintiff was required, but failed, to first obtain a stay pursuant to section 2-1203(b) of the Code (735 ILCS 5/2-1203(b) (West 2024)) within 30 days of the final judgment, the trial court had no jurisdiction to consider plaintiff's postjudgment motion. Defendant cites no authority (and we can find none) in support of her claim that plaintiff was first required to compel the court to stay its judgment within 30 days of that judgment before filing a postjudgment motion. Section 2-1203(b) merely relates to the *execution* of final orders following the filing of a notice of appeal; it does not set forth any prerequisites for filing a notice of appeal. Defendant's inchoate argument on this point is therefore without merit. We now turn to the issues raised before this court.

¶ 30    Plaintiff first contends that the trial court erred in granting defendant's motion for summary judgment on the basis that its notice of default was substantively defective and that the mortgage was extinguished as a matter of law (warranting dismissal of the mortgage foreclosure complaint). Specifically, plaintiff argues that its notice of default strictly complied with the requirements in paragraph 22 of the mortgage, that any defect in the notice was merely technical rather than substantive, and that defendant nonetheless suffered no prejudice. Plaintiff further argues that the court misapplied the statute of limitations on two bases: its foreclosure claim accrued at the time the complaint was filed and the statute of limitations had not run because the mortgage foreclosure complaint invoked the note. In the alternative, plaintiff also argues that, even if the statute of

limitations barred actions to enforce the note, the debt itself (and thus the mortgage) was not extinguished.

¶ 31     Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. § /2-1005(c).  Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).  To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32.  Unsupported conclusions, opinions, or speculation, however, do not raise a genuine issue of material fact. *Id.* at 132.

¶ 32     Since the parties filed cross-motions for summary judgment, they conceded that no material questions of fact existed and that only a question of law was involved that the trial court could decide based on the record. *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st) 191680, ¶ 12 (citing *Pielet v. Pielet*, 2012 IL 112064, ¶ 28).  Nonetheless, the mere filing of cross-motions for summary judgment does not conclusively establish that there is no issue of material fact, nor is the trial court obligated to enter summary judgment for either party. *Pielet*, 2012 IL 112064, ¶ 28.  We review the decision as to cross-motions for summary judgment *de novo*. *Id.* ¶ 30; see also *Outboard Marine*, 154 Ill. 2d at 102 (summary judgment reviewed *de novo*).

¶ 33                                    1. Plaintiff's Notice of Acceleration

¶ 34     Plaintiff's first contention of error concerns whether its notice of default complied with the requirements in the mortgage, which in turn is based upon the interpretation of a contract, a question of law subject to *de novo* review. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).  Principles of contract interpretation are well settled.  Our primary duty in construing a contract is

to give effect to the parties' intent at the time they entered into the agreement, as shown by the language used in the contract. *In re Doyle*, 144 Ill. 2d 451 (1991). Illinois courts follow the "four corners rule" for contract interpretation, which requires that we initially look to the language of the agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). If the language of the contract is facially unambiguous, then the trial court interprets the contract as a matter of law without the use of parol evidence. *Id.* By contrast, if the agreement is ambiguous or reasonably capable of more than one interpretation, the court may consider parol evidence to ascertain the parties' intent. *Id.* at 462-63; but see *Camp v. Hollis*, 332 Ill. App. 60, 68 (1947) (noting that it is a well-settled rule that, if a contract is susceptible of two constructions, the one that is "rational and probable" must be preferred). Nonetheless, a contractual term is not ambiguous simply because the parties disagree on its meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004).

¶ 35    Typically, a "condition precedent" is an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform. *Accetturo*, 2016 IL App (1st) 152783, ¶ 32. A notice of acceleration is a condition precedent to foreclosure under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2016)). *Accetturo*, 2016 IL App (1st) 152783, ¶ 33 (" 'If CitiMortgage had not sent an acceleration notice, it would not be entitled to foreclose,' therefore not satisfying 'a condition precedent to its right to bring suit.' " (quoting *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 16)). The failure to perform a condition precedent may be construed as a breach of contract. *Id.* ¶ 32.

¶ 36    Courts have held that, with regard to presuit notice requirements in foreclosure cases, dismissal of an action is warranted where the notice is lacking in substance (*Cruz*, 2019 IL App (1st) 182678, ¶ 35 (citing *Accetturo*, 2016 IL App (1st) 152783, ¶ 42)), but dismissal is not

warranted where a defect in notice is merely "technical" and does not prejudice defendant (*id.* (citing *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27, and *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 15)). Although *Pajor* and *Luca* both involved statutory requirements, *Cruz* involved a contractual requirement, as here. Compare *Pajor*, 2012 IL App (2d) 110899, ¶ 11, and *Luca*, 2013 IL App (3d) 120601, ¶ 15, with *Cruz*, 2019 IL App (1st) 182678, ¶ 19. Yet we see nothing in *Pajor* or *Luca* that would restrict their holdings to *statutory* notice requirements.

¶ 37      The issue in this appeal centers on whether plaintiff's pre-suit notice complied with section 22 of the mortgage—specifically, whether it properly advised defendant that, under certain circumstances, she could reinstate the mortgage after acceleration. As noted above, section 22 required the notice to indicate (1) the default; (2) the action required to cure the default; (3) a deadline (of at least 30 days from the date of the notice) to cure the default; and (4) that the failure to cure the default by the date in the notice *may* result in acceleration of the amount owed as well as the subsequent foreclosure and sale of the property. The notice here (dated September 17, 2007) provided that information. It unambiguously informed defendant that (1) she was in default; (2) she had to pay the balance due ($10,623.82) to cure the default; (3) she had to do so on or before October 17, 2007 (which was more than 30 days after the date of the notice); and (4) if she failed to cure the default, the mortgage payments "will" be accelerated, the full amount remaining will be due in full, and foreclosure proceedings will be initiated.

¶ 38      Although the notice further informed defendant that she may have the right to "bring a court action" to assert a defense to acceleration and foreclosure, this differs slightly from section 22's requirement that the notice inform defendant of the right to assert a defense to acceleration and foreclosure "in the foreclosure proceeding." The trial court, however, found that this difference was a mere technical defect and denied summary judgment in favor of defendant on this

precise point. See, *e.g.*, *U.S. Bank N.A. v. Gold*, 2019 IL App (2d) 180451, ¶¶ 11-14. Defendant does not challenge the court's finding regarding this purported defect.

¶ 39    Section 22 further required that the notice inform defendant of the right to reinstate after acceleration.    Defendant argues that the notice's provision regarding post-acceleration reinstatement was substantively defective (thus warranting dismissal of plaintiff's foreclosure complaint) because, according to defendant, had she paid the "cure" amount ($10,623.82) after the loan was accelerated, that alone would not be sufficient to reinstate the loan based upon section 19 of the mortgage.    As set forth *supra*, section 19 stated that, to reinstate her loan following acceleration, defendant would have to not only cure the payment default (again, $10,623.82), but also (1) cure any other defaults, (2) pay all expenses incurred in enforcing the mortgage, and (3) take other action "reasonably require[d]" to protect plaintiff's property interest/rights under the loan and to maintain her obligations under the mortgage.    Defendant does not point to anything in the record (nor did we find anything) to establish that there were any other defaults, unpaid expenses, or any uncompleted "action" that defendant had to undertake to ensure plaintiff's continued rights and defendant's continued obligations.

¶ 40    Moreover, the notice explicitly advised defendant that she "may, if required by law or [her] loan documents, have the right to *cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of [her] property if all amounts past due are paid within the time permitted by law*." (Emphasis added.)    This statement implies that the only thing defendant had to do to reinstate her mortgage post-acceleration would be to merely pay the outstanding balance. This is consistent with section 15-1602 of the Code, which provides that a mortgagor may "reinstate" a defaulted mortgage that has been accelerated by

> "curing all defaults then existing *** and by paying all costs and expenses required by the
>
> mortgage to be paid in the event of such defaults, provided that such cure and payment are

> made prior to the expiration of 90 days from the date the mortgagor *** ha[s] been served with summons or *** ha[s] otherwise submitted to the jurisdiction of the court." 735 ILCS 5/15-1602 (West 2008).

Section 15-1602 further states, "*Upon such reinstatement of the mortgage*, the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and *the mortgage documents shall remain in full force and effect as if no acceleration or default had occurred*. (Emphases added.) *Id.*

¶ 41    In addition, section 19 of the mortgage, which forms a part of defendant's loan documents, lists precisely what she must do to reinstate her mortgage after it has been accelerated. Since both the statute and her loan documents provided her with the right to reinstate her loan post-acceleration, this particular defect in the notice is a technical defect, not a substantive one. Defendant conceded at oral argument that she never alleged prejudice at any point in this 19-year-old case and did not raise the notice's language until 12 years into the case. Granting defendant's summary judgment motion (and dismissing plaintiff's mortgage foreclosure complaint) as a matter of law was therefore erroneous.

¶ 42    In an unpublished decision, this court considered this issue in *Wilmington Trust, N.A. v. Podar*, 2018 IL App (1st) 172960-U. Although the acceleration notice in *Podar* did not "mirror the language" of the mortgage provision (that was virtually indistinguishable from the provision here), the notice nonetheless "met the requirements" of that provision and was "no more than a technical defect." We further agree with the reasoning in *Deutsche Bank National Trust Co. v. Ravitz*, 2019 IL App (1st) 181030-U, ¶ 21, that the mere fact that "the acceleration notice did not use the exact language, word-for-word, as the language in paragraph 22 of the mortgage does not constitute a failure to perform a condition precedent to foreclosure and can only be construed as a technical defect." Although *Podar* and *Ravitz* were issued as "unpublished" decisions pursuant

to Illinois Supreme Court Rule 23(e) (Ill. S. Ct. R. 23(e) (eff. Apr. 1, 2018), and nonprecedential orders issued before 2021 may be cited by parties only for limited purposes, this court is not prohibited from adopting sound reasoning. See *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶ 27 (stating that this court "need not ignore persuasive reasoning in a nonprecedential order any more than persuasive reasoning in a learned treatise or anywhere else"). Moreover, nonprecedential orders issued after 2021 may be cited as persuasive authority, and Illinois courts have continued to adhere to these holdings. See, *e.g.*, *Deutsch Bank National Trust Co. v. Diedrick*, 2022 IL App (2d) 200022-U, ¶ 31 (holding that a notice of acceleration mailed to the borrowers' attorney instead of the property address, as required, was a technical defect negating dismissal in the absence of prejudice on the part of the borrowers)[3]; *People v. Parentice*, 2026 IL App (4th) 250222, ¶ 92 ("Although an unpublished order is not binding authority, we, as a court of review, are entitled to consider it for any persuasive weight we might give it, similar to when this court adopts an analysis from either a sister state appellate court or a law review article." (citing *Osman v. Ford Motor Co.*, 359 Ill. App. 3d 367, 374 (2005))); *Midwest Medical Records Ass'n v. Brown*, 2018 IL App (1st) 163230, ¶ 29 (citing *Osman*, 359 Ill. App. 3d at 374). We adopt the sound reasoning of *Podar*, *Ravitz*, and *Diedrick*. Accordingly, we now hold that a borrower is not entitled to judgment as a matter of law simply because a notice of default and acceleration does not repeat verbatim the language of the mortgage. If the notice accurately describes the substance of the mortgage and the only discrepancies are technical, then the borrower must show that those discrepancies prejudiced him or her.

¶ 43        Finally, defendant's reliance upon *Accetturo* and *Cruz* is unavailing. In *Accetturo*, this court noted that the plaintiff sent five letters to the defendant, *none of which* were sent before

---

[3]We note that, although the name of the plaintiff in this case begins with "Deutsche," the title of this case is spelled "Deutsch." For the sake of consistency, we are maintaining this likely misspelling.

acceleration. *Accetturo*, 2016 IL App (1st) 152783, ¶¶ 39-42. In addition, the first three letters failed to include the specific information required by the mortgage, including

"(i) *** what must be done to cure the default, (ii) [the] date on which to cure the default, (iii) information stating that failure to cure the default may result in acceleration ***[,] foreclosure by judicial proceeding[,] and sale of the Property, and (iv) information about [the defendant's] right to reinstate or assert defenses to the acceleration and foreclosure."

*Id.* ¶ 39.

The fourth letter did not (i) mention acceleration; (ii) provide the defendant with 30 days to cure the default; (iii) warn that failure to cure may result in acceleration, foreclosure, and sale of the property; and (iv) advise the defendant of her right to reinstate or assert defenses to acceleration and foreclosure. *Id.* ¶ 40. Finally, the fifth letter mentioning acceleration for the first time was sent *after* the note had already been accelerated, contrary to the mortgage requirement that it be sent *prior to* acceleration. *Id.* ¶ 41.

¶ 44　　　　In *Cruz*, the mortgage included a requirement that the defendant receive notice before acceleration consisting of substantially the same information as the case before us. *Cruz*, 2019 IL App (1st) 182678, ¶ 6. The plaintiff (the assignee of the junior lender), however, sent four demand letters to the defendant, all of which were "severely deficient in substance." *Id.* ¶ 39. The first letter did not state the overdue amount or provide the defendant with a 10-day period to pay that amount to avoid default as required under the mortgage; instead, it stated that the defendant owed the entire outstanding principal, implying that the note had already been accelerated. *Id.* The second and third letters "referred generically to 'this debt' and 'your account' but made no reference to the amount of the debt and did not provide any grace period for repayment." *Id.* The fourth letter again implied that the note was already accelerated because it stated that "the entire

outstanding principal was 'due and owing' " and demanded that the defendant pay the entire sum, not solely the overdue payments, within 14 days to avoid litigation. *Id.*

¶ 45 The facts of the case here do not remotely establish this level of nonconformity. Accordingly, defendant's reliance upon *Accetturo* and *Cruz* does not alter our holding. The trial court therefore erred in granting defendant's motion for summary judgment on this point (and subsequently dismissing plaintiff's complaint on this basis).

¶ 46 2. The Statute of Limitations

¶ 47 Plaintiff next contends that the trial court erroneously found that the statute of limitations for filing a cause of action on the note had expired, which then extinguished the mortgage as a matter of law. Plaintiff first argues that its foreclosure claim accrued on the date that it filed its initial mortgage foreclosure complaint—namely, December 24, 2007. Plaintiff further argues that its foreclosure complaint "invoked" the note (*i.e.*, was tantamount to bringing an action under the note), and therefore the statute of limitations on actions on the underlying note did not expire. In the alternative, plaintiff argues that, even if this court holds that the statute of limitations on the underlying note did expire, that fact would not extinguish the mortgage as a matter of law.

¶ 48 This issue concerns the construction of various statutory provisions, the principles of which are well established. When construing a statute, our goal is to " 'ascertain and give effect to the intent of the legislature.' " *Trapp v. City of Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 16 (quoting *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009)). This inquiry begins with the language of the statute, " 'the best indicator of legislative intent.' " *Id.* (quoting *Kean*, 235 Ill. 2d at 361). Where the language in the statute is clear and unambiguous, we apply the statute as written without resort to extrinsic aids of statutory construction. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009).

21

¶ 49     Since all provisions of a statutory enactment are viewed as a whole, we interpret the statute in light of other relevant portions of the statute and do not construe words and phrases in isolation. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003). We must further presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Id.* at 508. In essence, we must employ a " 'practical and common-sense construction.' " *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 (quoting *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951)). The interpretation of a statute is a question of law that we review *de novo*. *Id.* ¶ 16.

¶ 50     Section 13-206 of the Code provides in pertinent part as follows:

> "[A]ctions on *** promissory notes *** or other evidences of indebtedness in writing *** shall be commenced within 10 years next after the cause of action accrued ***. For purposes of this Section, *** a cause of action on a promissory note payable at a definite date accrues on the due date or date stated in the promissory note or the date upon which the promissory note is accelerated." 735 ILCS 5/13-206 (West 2008).

Section 13-206 further provides that if any payment or new promise to pay has been made in writing on any note "within or after the period of 10 years," then an action may be commenced "at any time within 10 years after the time of such payment or promise to pay." *Id.*

¶ 51     By contrast, section 13-115 of the Code states, "No person shall commence an action or make a sale to foreclose any mortgage or deed of trust in the nature of a mortgage, unless within 10 years after the right of action or right to make such sale accrues." *Id*. § 13-115. Where, as here, the mortgage contains an acceleration provision that states that acceleration is optional and the creditor "unequivocally exercises" the option, it has been held that the statute begins to

Nos. 1-24-2136, 1-24-2258 (cons.)

run immediately upon default. *Deutsche Bank Trust Co. Americas as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15 v. Sigler*, 2020 IL App (1st) 191006, ¶ 42.

¶ 52    Finally, section 15-1504 of the Code provides in part as follows:

"(a) Form of Complaint.  A foreclosure complaint may be in

substantially the following form:

* * *

REQUEST FOR RELIEF

Plaintiff requests:

(i) A judgment of foreclosure and sale.

(ii) An order granting a shortened redemption period,

if sought.

(iii) A personal judgment for a deficiency, if sought.

(iv) An order granting possession, if sought.

(v) An order placing the mortgagee in possession or

appointing a receiver, if sought.

(vi) A judgment for attorneys' fees, costs and

expenses, if sought.

(b) Required Information.  A foreclosure complaint need

contain only such statements and requests called for by the form set

forth in subsection (a) of Section 15-1504 as may be appropriate for

the relief sought.  ***

* * *

23

(e) Request for Foreclosure.  The request for foreclosure is deemed and construed to mean that the plaintiff requests that:

(1) an accounting may be taken under the direction of the court of the amounts due and owing to the plaintiff; ***

\* \* \*

(f) Request for Deficiency Judgment.  A request for a personal judgment for a deficiency in a foreclosure complaint if the sale of the mortgaged real estate fails to produce a sufficient amount to pay the amount found due,  the plaintiff may have a personal judgment against any party in the foreclosure indicated as being personally liable therefor and the enforcement thereof be had as provided by law."  735 ILCS 5/15-1504 (West 2008).

Section 15-1508(e) states in relevant part that, in its order confirming the sale, "the court *shall* also enter a personal judgment for deficiency against any party" if otherwise authorized and "to the extent requested in the complaint and proven upon presentation of the report of sale ***."  *Id.* § 15-1508(e).  This section further provides that the enforcement for the collection of the deficiency is "the same as when the judgment is solely for the payment of money."  *Id.*

¶ 53    In this case, the trial court found that, to prevent the statute of limitations on the note from running (and thus "entitling [plaintiff] to maintain its present foreclosure action"), plaintiff was required to file either "a separate count seeking relief under the [n]ote directly or *** a separate action on the [n]ote itself."  Plaintiff and *amicus* ALFN contend that, pursuant to statute and controlling precedent, a mortgage foreclosure claim seeks relief under the note, as well.

¶ 54    *First Midwest Bank v. Cobo*, 2018 IL 123038, provides guidance on the issue of whether filing a mortgage foreclosure complaint substantially in the form set forth in section 15-1504(a)

necessitates an adjudication on the underlying note. In *Cobo*, the defendants (Cobo and Rule) obtained a loan from a lender (Waukegan Savings and Loan, SB) and executed a mortgage on their property to secure the loan. *Id.* ¶ 5. Later, the lender began foreclosure proceedings, seeking foreclosure and sale of the property as well as a "deficiency judgment for the remaining debt against [the] defendants." *Id.* ¶ 6. The plaintiff subsequently acquired the lender's interest in the note and mortgage and voluntarily dismissed the foreclosure suit. *Id.* ¶ 7. The plaintiff filed a new lawsuit against the defendants for "breach of a promissory note," alleging that the defendants had defaulted on their loan and seeking damages for the remaining principal balance plus interest, late fees, and other costs. *Id.* Two years later, the plaintiff moved to continue the trial date, but when the trial court denied that motion, the plaintiff voluntarily dismissed its suit. *Id.* ¶ 8. The plaintiff then filed another lawsuit, alleging breach of a promissory note and unjust enrichment. *Id.* ¶ 9. The trial court denied the defendants' motion to dismiss based upon the single filing rule and granted the plaintiff's summary judgment motion. *Id.* ¶¶ 10-12. The appellate court vacated the trial court's order and dismissed the complaint, and the supreme court affirmed, vacating the trial court's summary judgment order and dismissing the case. *Id.* ¶¶ 13, 42.

¶ 55 The *Cobo* court agreed with the defendants that the plaintiff's two later suits for breach of a promissory note asserted the same cause of action as the plaintiff's predecessor's first suit under the mortgage and the note. *Id.* ¶ 20. The court noted that all complaints alleged the same default date and that the defendants were personally liable for the same outstanding principal balance. *Id.* The *Cobo* court, however, then added, "Most importantly, *** [the plaintiff's] predecessor expressly sought a deficiency judgment under the note." *Id.* The court noted that the predecessor's complaint had only one count, entitled " 'FORECLOSURE,' " but it requested a personal deficiency judgment as one of its remedies. *Id.* The court then held, "For practical

25

purposes, the request for a deficiency judgment asserted a second claim, this one under the note."

*Id.*

¶ 56    On this issue, the trial court also erred in granting defendant's motion for summary judgment.  At the outset, the mortgage foreclosure complaint was timely filed.  The mortgage contains an optional acceleration provision, so we must determine when the creditor (here, plaintiff) "unequivocally exercise[d]" the option.  (Internal quotation marks omitted.)  *Sigler*, 2020 IL App (1st) 191006, ¶ 42.  Plaintiff filed its initial foreclosure complaint on December 24, 2007, which stated that the entire remaining mortgage balance was due, among other amounts.  This would plainly be an unequivocal exercise of its option to accelerate the defaulted note and, thus, was timely filed within the relevant statute of limitations.  Plaintiff's pre-suit notice, however, indicated that, if defendant failed to pay the then-outstanding amount due (approximately $10,000) by October 17, 2007, the mortgage payments "will be accelerated *** and foreclosure proceedings will be initiated at that time."  Although it is uncertain whether that is an unequivocal statement that the loan would be accelerated immediately upon October 18, 2007 (and we further note that foreclosure proceedings from the court's perspective did not initiate until the filing of the complaint in December 2007), plaintiff's foreclosure complaint is timely, even using the October 2007 date as the accrual date.  See 735 ILCS 5/13-115 (West 2008) (10-year statute of limitations for mortgage foreclosure actions).

¶ 57    In addition, an action on the underlying note would have accrued on the date of plaintiff's pre-suit notice to defendant, namely, September 17, 2007.  Accordingly, the 10-year statute of limitations began to run on that date, and plaintiff had to file any cause of action on or before September 17, 2017.  See *id*. § 13-206 (10-year statute of limitations for actions on promissory notes); 5 ILCS 70/1.11 (West 2008); *Berry v. G.D. Searle & Co.*, 56 Ill. 2d 548, 557 (1974).  As

with the limitations period for mortgage foreclosure actions, plaintiff's December 2007 filing was also well within the statutory limitations period for actions on notes.

¶ 58    Plaintiff's initial mortgage foreclosure complaint further sought as a remedy not only the foreclosure and sale of the property, but also a "personal judgment for a deficiency" against "those defendants/obligors not discharged in Bankruptcy." According to the holding in *Cobo*, this had the practical effect of asserting a second claim under the note. *Cobo*, 2018 IL 123038, ¶ 20. As a consequence, the statute of limitations for actions to enforce the note did not bar plaintiff's timely filed mortgage foreclosure action because it was filed before the expiration of both (1) the mortgage foreclosure limitations period and (2) the limitations period for actions on notes.

¶ 59    Moreover, we note that the *Cobo* court affirmed that "lenders may pursue a claim under the mortgage and note either consecutively or concurrently" and observed that no part of the plaintiff's predecessor complaint, which sought relief under the mortgage and note concurrently, "was inappropriate at the time it was filed." *Id*. ¶ 37. The court, however, held that a lender (*i.e.*, the plaintiff) "may not assert a claim under the mortgage and the note concurrently by seeking a foreclosure and a deficiency judgment and then assert a claim under the note consecutively *twice more*." (Emphasis added.) *Id.* The unmistakable inference from this last statement (*i.e.*, that the claim on the note was filed "twice" after the initial claim) was that the initial complaint in *Cobo* did assert a claim under the note, despite the fact that it was a single-count mortgage foreclosure complaint. Hence, pursuant to *Cobo*, plaintiff here was not required to file a separate count on the underlying note in order to maintain its mortgage foreclosure complaint. Accordingly, the trial court's determination to the contrary was erroneous, and its subsequent granting of defendant's summary judgment motion and dismissal of plaintiff's foreclosure complaint was improper. We must therefore reverse the judgment of the trial court and remand the matter for further proceedings. Although *Cobo* involved a dismissal pursuant to the single filing rule, the court's

holding—as a practical matter, requesting a deficiency judgment in a mortgage foreclosure complaint asserts a second claim under the note—was not strictly limited solely to the application of the single filing rule. *Id.* ¶ 20.

¶ 60 We recognize that the initial foreclosure complaint sought (in its third requested relief) a personal deficiency judgment against the debtors or obligors (whose obligation on the debt had not been discharged in bankruptcy) but, by contrast, the third requested relief in plaintiff's amended complaint was incomplete. Specifically, the third requested relief lacks the term "personal deficiency judgment." Instead, it only makes a vague reference to those defendants or obligors who (1) did not have the subject debt discharged through the bankruptcy process or (2) were not "involved" in bankruptcy proceedings where the bankruptcy stay had been modified solely for foreclosure. Regardless of whether the phrase "personal deficiency judgment" in the amended relief section was inadvertently or intentionally omitted, the amended complaint would still nonetheless relate back to the initial timely filed complaint where, as here, the amended complaint clearly arose out of the same transaction or occurrence. See 735 ILCS 5/2-616(b) (West 2010); *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 21. Accordingly, defendant here, like the *Cobo* defendants, "became alerted to the possibility" that she would need to defend against a claim under the note. See *Cobo*, 2018 IL 123038, ¶ 25.

¶ 61 Finally, defendant's reliance upon *United Central Bank v. KMWC 845, LLC*, 800 F.3d 307 (7th Cir. 2015), does not change the outcome. We note at the outset that the decisions of lower federal courts are not binding on this court. See *Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 34 (citing *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 175 (2009) (citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302 (2001))). In any event, *KMWC* is factually distinct. There, a mortgage foreclosure complaint had been filed at a time when *any* cause of action on the underlying note was barred by the "single refiling rule."

*KMWC*, 800 F.3d at 311. Here, by contrast, at the time plaintiff filed its initial foreclosure complaint, there was no procedural bar (such as the statute of limitations) to a cause of action on the underlying note. Defendant's reliance upon *KMWC* is therefore unavailing. Since we have already concluded that plaintiff's foreclosure complaint was timely filed under the statute of limitations, it is unnecessary for us to consider its argument in the alternative that the trial court erred in finding that, based upon its (now erroneous) finding that the note was "barred," the foreclosure complaint and associated lien was similarly "barred."

¶ 62    Finally, plaintiff also challenges the trial court's order of October 24, 2024, which granted defendant's amended petition for attorney fees and costs, awarding her $160,492.52. Pursuant to section 15-1510(a) of the Code, the court may award attorney fees to a defendant "who *prevails* in a motion, an affirmative defense or counterclaim, or in the foreclosure action." (Emphasis added.) 735 ILCS 5/15-1510(a) (West 2024). Based upon our holding, defendant here has not "prevailed" at this time. Accordingly, we vacate the court's order granting defendant's petition for attorney fees and costs.

¶ 63         III. CONCLUSION

¶ 64    The trial court erred in granting defendant's motion for summary judgment. Accordingly, we reverse the judgment of the circuit court of Cook County in this appeal and remand the cause for further proceedings. In addition, we vacate the trial court's order granting defendant's petition for attorney fees.

¶ 65    Reversed in part and vacated in part.

¶ 66    Cause remanded.

***Bank of New York Mellon v. Bartelstein***, **2026 IL App (1st) 242136**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2007-CH-38051; the Hon. William B. Sullivan, Judge, presiding. |
| **Attorneys for Appellant:** | Chelsea D.B. Valente and C. Ambrosia O'Connor, of Akerman LLP, of Chicago, Nicholas E. Belay, of Las Vegas, Nevada, and Celia C. Falzone, of Jacksonville, Florida, for appellant. |
| **Attorneys for Appellee:** | Rade Radjenovich, of Jeffrey Strange & Associates, of Wilmette, for appellee. |
| *Amicus Curiae*: | James V. Noonan and Patrick T. Schuette, of Noonan & Lieberman, Ltd., and Blake A. Strautins and Daniel J. May, of Kluever Law Group, LLC, both of Chicago, and Michael Rak, of Lender Legal PLLC, of Orland, Florida, for *amicus curiae* American Legal and Financial Network. |